FILED
12 JUN 27 PM 3:44

**CASE UNSEALED PER ORDER OF COURT**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

June 2011 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>IRVING SCHWARTZ (1),<br>JOSE MELENDEZ (2),<br><br>  Defendants. | Case No. **12CR2599 BEN**<br><br><u>I N D I C T M E N T</u><br><br>Title 18, U.S.C., Sec. 371 - Conspiracy; Title 18, U.S.C., Sec. 1347 - Health Care Fraud; Title 18, U.S.C., Sec. 1512 - Attempt to Tamper with a Witness; Title 18, U.S.C., Sec. 2 - Aiding and Abetting; Title 18, U.S.C., Sec. 982(a)(7) - Criminal Forfeiture |

The grand jury charges:

**INTRODUCTORY ALLEGATIONS**

At all times pertinent to this Indictment:

**THE DEFENDANTS AND OTHER PARTICIPANTS**

1. Defendant IRVING SCHWARTZ ("SCHWARTZ") was a medical doctor who prescribed power wheelchairs and accessories to Medicare beneficiaries who lived in Imperial County, which is located within the Southern District of California.

//
//
//
//

SMB:vp:San Diego
6/26/12

2. Defendant JOSE MELENDEZ was the owner and operator of Oceanside Medical Services ("Oceanside Medical"), a California business entity doing business at 2643 East Carson Street, Long Beach, California 90810. MELENDEZ, through Oceanside Medical, was engaged in the business of selling Durable Medical Equipment ("DME"), including power wheelchairs and accessories, to Medicare beneficiaries.

3. Co-conspirator Gloria Hernandez (charged elsewhere) was a patient recruiter who located Medicare beneficiaries whose unique identification numbers could be used to file claims with Medicare for DME.

4. Co-conspirators Aristeo and Laura Tavares (charged elsewhere) were the joint owners and operators of A&L Medical Supply ("A&L"), a California business entity doing business at 3711 North Harbor Drive #B, Fullerton, California 92835. Aristeo and Laura Tavares, through A&L, were engaged in the business of selling DME, including power wheelchairs and accessories, to Medicare beneficiaries.

**THE MEDICARE PROGRAM**

5. The Medicare Program ("Medicare") was a federal health care program, affecting commerce, that provided benefits to individuals who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS"). Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

2

6. Medicare was subdivided into multiple Parts. Medicare Part B covered, among other things, medically necessary physician services and outpatient care, including an individual's access to DME, such as power wheelchairs and accessories.

7. CMS contracted with private insurance carriers to process and pay Medicare claims. DME claims in Southern California were processed and paid by the Durable Medical Equipment Regional Carrier for Region D, which covers the Western United States.

8. Patients who qualified for Medicare benefits were commonly referred to as "beneficiaries." Each beneficiary was given a Health Identification Card ("HIC") containing a unique identification number.

9. DME companies, physicians and other healthcare providers that provided services to Medicare beneficiaries were referred to as Medicare "providers." To become eligible to participate in Medicare, a provider was required to submit an application in which he/she agreed to comply with all governing laws and regulations. Once approved by Medicare, a provider was assigned a "provider number." A health care provider with a provider number could file claims with Medicare to obtain reimbursement for services rendered to beneficiaries. Payments under the Medicare program were often made directly to providers, rather than to the beneficiaries.

10. Defendant IRVING SCHWARTZ first became a Medicare provider on or about January 1, 1988, and was issued a Medicare provider number.

11. Defendant JOSE MELENDEZ became a Medicare provider on or about June 16, 2005, and was issued a Medicare provider number.

//
//

12. Co-conspirator Aristeo Tavares became a Medicare provider on or about September 6, 2007, and was issued a Medicare provider number.

13. Medicare reimbursed DME companies and other health care providers for equipment and services rendered to beneficiaries. Medicare would only reimburse providers for DME and related items if the DME was prescribed by the beneficiary's physician and was medically necessary for the treatment of the beneficiary's illness or injury.

14. Under Medicare regulations, a power wheelchair was only considered medically necessary if: (1) the beneficiary had a mobility limitation that significantly impaired the beneficiary's ability to walk, feed, dress, or bathe; and (2) the beneficiary had so little upper body strength that he or she could not accomplish these activities by using a manual wheelchair, walker or cane.

15. To ensure that each beneficiary met these criteria, Medicare required a physician to conduct a face-to-face examination and provide a written evaluation about the beneficiary's mobility and his/her need for a power wheelchair. Only after conducting this face-to-face examination could a physician write a prescription for a power wheelchair. Medicare regulations required the records of the face-to-face examination and the power wheelchair prescription to be forwarded to the DME company within 45 days of completion of the face-to-face examination.

16. If a DME company filled a valid prescription and supplied a power wheelchair to a Medicare beneficiary, the DME company could submit a claim to Medicare for reimbursement. A Medicare claim for DME reimbursement was required to set forth, among other things, the

beneficiary's name and unique Medicare identification number, the equipment provided to the beneficiary, the date that the equipment was provided, the cost of the equipment, and the name and unique physician identification number of the physician who prescribed the equipment.

17. To receive reimbursement from Medicare, DME companies submitted or caused the submission of claims for payment for services to beneficiaries, either directly or through a billing company. Approved Medicare providers could submit claims on paper or electronically. When submitting a claim, the provider was required to certify: (1) that the contents of the claim were true, correct, and complete; (2) that the claim was prepared in compliance with the laws and regulations governing Medicare; and (3) that the equipment referred to in the claim was medically necessary.

18. To protect the integrity of Medicare, federal law prohibited doctors and DME companies from paying or receiving illegal remuneration, including kickbacks and bribes, in exchange for power wheelchair prescriptions that were billed to Medicare.

### Count 1

### CONSPIRACY TO PAY AND RECEIVE HEALTH CARE KICKBACKS AND DEFRAUD MEDICARE

[18 U.S.C. § 371]

19. Paragraphs 1 through 18 of the Introductory Allegations of this Indictment are realleged and incorporated by reference.

20. Beginning no later than in or about July 2007, and continuing until in or about September 2008, within the Southern District of California, and elsewhere, Defendants IRVING SCHWARTZ and JOSE MELENDEZ, together with Co-conspirators Hernandez, Aristeo Tavares and Laura Tavares (all charged elsewhere), and others known

and unknown to the Grand Jury, did knowingly and intentionally conspire together and with each other and with other persons known and unknown to the grand jury, to commit offenses against the United States as set forth below:

    a. To execute a material scheme to defraud a health care benefit program, that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, promises, and omission and concealment of material facts, money and property owned by, and under the custody and control of, Medicare, in connection with the delivery of and payment for health care benefits, items and services, in violation of 18 U.S.C. § 1347; and

    b. To knowingly and wilfully solicit, pay, offer and receive remuneration, specifically kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring beneficiaries for the furnishing and arranging for the furnishing for any item and service for which payment may be made in whole or in part by a Federal health care program, in violation of 42 U.S.C. § 1320a-7b.

### PURPOSE OF THE CONSPIRACY

21. It was the purpose of the conspiracy for the Defendants and their Co-conspirators to unlawfully enrich themselves by, among other things, submitting and causing the submission of false and fraudulent claims to Medicare.

### THE MANNER AND MEANS OF THE CONSPIRACY

22. The manner and means by which the Defendants and their Co-conspirators sought to accomplish the objects of the conspiracy were, in substance, as follows:

//

a. Co-conspirator Hernandez would travel to the Southern District of California to recruit Medicare beneficiaries by offering free DME, including power wheelchairs, to beneficiaries who had no medical need for such equipment.

b. Defendant SCHWARTZ would travel with Co-conspirator Hernandez to the homes of Medicare beneficiaries in the Southern District of California, and would write false and fraudulent prescriptions for power wheelchairs and other DME ("power wheelchair prescriptions"), even though the DME was not medically necessary.

c. Defendant MELENDEZ and Co-conspirator Hernandez would pay bribes and kickbacks to Defendant SCHWARTZ in exchange for the fraudulent power wheelchair prescriptions written by Defendant SCHWARTZ.

d. Defendant MELENDEZ would sell some of the fraudulent power wheelchair prescriptions written by Defendant SCHWARTZ to Co-conspirators Aristeo and Laura Tavares.

e. Defendant MELENDEZ and Co-conspirators Aristeo and Laura Tavares would submit the fraudulent power wheelchair prescriptions to Medicare and claim reimbursement for approximately $1,355,764 in false and fraudulent claims.

### OVERT ACTS

23. In furtherance of the conspiracy, and to accomplish its purpose, the following overt acts were committed, among others:

a. In or about October 2007, Defendant SCHWARTZ wrote a false and fraudulent prescription for a power wheelchair and accessories ("power wheelchair prescription") for Medicare beneficiary J.R.

//

b. In or about October 2007, Defendant SCHWARTZ sold the false and fraudulent power wheelchair prescription for J.R. to Co-conspirator Hernandez in exchange for a $300 cash kickback.

c. In or about October 2007, Defendant MELENDEZ purchased J.R.'s false and fraudulent power wheelchair prescription from Co-conspirator Hernandez in exchange for a kickback of approximately $1,000.

d. On or about October 31, 2007, Defendant MELENDEZ, knowing J.R.'s prescription to be false and fraudulent, submitted a false claim to Medicare for reimbursement of the power wheelchair and accessories.

e. In or about November 2007, Defendant SCHWARTZ wrote a false and fraudulent power wheelchair prescription for Medicare beneficiary E.L.

f. In or about November 2007, Defendant SCHWARTZ sold the false and fraudulent power wheelchair prescription for E.L. to Co-conspirator Hernandez in exchange for a $300 cash kickback.

g. In or about November 2007, Defendant MELENDEZ purchased E.L.'s false and fraudulent power wheelchair prescription from Co-conspirator Hernandez in exchange for a kickback of approximately $1,000.

h. On or about November 28, 2007, Defendant MELENDEZ, knowing E.L.'s prescription to be false and fraudulent, submitted a false claim to Medicare for reimbursement of the power wheelchair and accessories.

i. In or about December 2007, Defendant SCHWARTZ wrote a false and fraudulent power wheelchair prescription for Medicare beneficiary L.L.

j.  In or about December 2007, Defendant SCHWARTZ sold the false and fraudulent power wheelchair prescription for L.L. to Co-conspirator Hernandez in exchange for a $300 cash kickback.

k.  In or about December 2007, Defendant MELENDEZ purchased L.L.'s false and fraudulent power wheelchair prescription from Co-conspirator Hernandez in exchange for a kickback of approximately $1,000.

l.  On or about December 7, 2007, Defendant MELENDEZ, knowing L.L.'s prescription to be false and fraudulent, submitted a false claim to Medicare for reimbursement of the power wheelchair and accessories.

m.  In or about December 2007, Defendant SCHWARTZ wrote a false and fraudulent power wheelchair prescription for Medicare beneficiary H.U.

n.  In or about December 2007, Defendant SCHWARTZ sold the false and fraudulent power wheelchair prescription for H.U. to Co-conspirator Hernandez in exchange for a $300 cash kickback.

o.  In or about December 2007, Defendant MELENDEZ purchased H.U.'s false and fraudulent power wheelchair prescription from Co-conspirator Hernandez in exchange for a kickback of approximately $1,000.

p.  On or about December 7, 2007, Defendant MELENDEZ, knowing H.U.'s prescription to be false and fraudulent, submitted a false claim to Medicare for reimbursement of the power wheelchair and accessories.

q.  In or about December 2007, Defendant SCHWARTZ wrote a false and fraudulent power wheelchair prescription for Medicare beneficiary M.R.

  r. In or about December 2007, Defendant SCHWARTZ sold the false and fraudulent power wheelchair prescription for M.R. to Co-conspirator Hernandez in exchange for a $300 cash kickback.

  s. In or about December 2007, Defendant MELENDEZ purchased M.R.'s false and fraudulent power wheelchair prescription from Co-conspirator Hernandez in exchange for a kickback of approximately $1,000.

  t. On or about December 12, 2007, Defendant MELENDEZ, knowing M.R.'s prescription to be false and fraudulent, submitted a false claim to Medicare for reimbursement of the power wheelchair and accessories.

  u. In or about January 2008, Defendant SCHWARTZ wrote a false and fraudulent power wheelchair prescription for Medicare beneficiary J.C.

  v. In or about January 2008, Defendant SCHWARTZ sold the false and fraudulent power wheelchair prescription for J.C. to Co-conspirator Hernandez in exchange for a $300 cash kickback.

  w. In or about January 2008, Defendant MELENDEZ purchased J.C.'s false and fraudulent power wheelchair prescription from Co-conspirator Hernandez in exchange for a kickback of approximately $1,000.

  x. In or about January 2008, Defendant MELENDEZ sold J.C.'s false and fraudulent power wheelchair prescription to Co-conspirators Aristeo and Laura Tavares.

  y. On or about January 5, 2008, Co-conspirators Aristeo and Laura Tavares, knowing J.C.'s prescription to be false and fraudulent, submitted a false claim to Medicare for reimbursement of the power wheelchair and accessories.

z.   In or about January 2008, Defendant SCHWARTZ wrote a false and fraudulent power wheelchair prescription for Medicare beneficiary S.R.

aa.   In or about January 2008, Defendant SCHWARTZ sold the false and fraudulent power wheelchair prescription for S.R. to Co-conspirator Hernandez in exchange for a $300 cash kickback.

bb.   In or about January 2008, Defendant MELENDEZ purchased S.R.'s false and fraudulent power wheelchair prescription from Co-conspirator Hernandez in exchange for a kickback of approximately $1,000.

cc.   On or about January 10, 2008, Defendant MELENDEZ, knowing S.R.'s prescription to be false and fraudulent, submitted a false claim to Medicare for reimbursement of the power wheelchair and accessories.

dd.   In or about January 2008, Defendant SCHWARTZ wrote a false and fraudulent power wheelchair prescription for Medicare beneficiary A.R.

ee.   In or about January 2008, Defendant SCHWARTZ sold the false and fraudulent power wheelchair prescription for A.R. to Co-conspirator Hernandez in exchange for a $300 cash kickback.

ff.   In or about January 2008, Defendant MELENDEZ purchased A.R.'s false and fraudulent power wheelchair prescription from Co-conspirator Hernandez in exchange for a kickback of approximately $1,000.

gg.   On or about January 10, 2008, Defendant MELENDEZ, knowing A.R.'s prescription to be false and fraudulent, submitted a claim to Medicare for reimbursement of the power wheelchair and accessories.

hh.  In or about January 2008, Defendant SCHWARTZ wrote a false and fraudulent power wheelchair prescription for Medicare beneficiary A.R.

ii.  In or about January 2008, Defendant SCHWARTZ sold the false and fraudulent power wheelchair prescription for A.R. to Co-conspirator Hernandez in exchange for a $300 cash kickback.

jj.  In or about January 2008, Defendant MELENDEZ purchased A.R.'s false and fraudulent power wheelchair prescription from Co-Conspirator Hernandez in exchange for a kickback of approximately $1,000.

kk.  On or about January 10, 2008, Defendant MELENDEZ, knowing A.R.'s prescription to be false and fraudulent, submitted a claim to Medicare for reimbursement of the power wheelchair and accessories.

ll.  In or about April 2008, Defendant SCHWARTZ wrote a false and fraudulent power wheelchair prescription for Medicare beneficiary M.A.

mm.  In or about April 2008, Defendant SCHWARTZ sold the false and fraudulent power wheelchair prescription for M.A. to Co-conspirator Hernandez in exchange for a $300 cash kickback.

nn.  In or about April 2008, Defendant MELENDEZ purchased M.A.'s false and fraudulent power wheelchair prescription from Co-conspirator Hernandez in exchange for a kickback of approximately $1,000.

oo.  In or about April 2008, Defendant MELENDEZ sold M.A.'s false and fraudulent prescription to Co-conspirators Aristeo and Laura Tavares.

//

pp. On or about April 3, 2008, Co-conspirators Aristeo and Laura Tavares, knowing M.A.'s prescription to be false and fraudulent, submitted a claim to Medicare for reimbursement of the power wheelchair and accessories.

All in violation of Title 18, United States Code, Section 371.

## Counts 2-11

### HEALTH CARE FRAUD

### [18 U.S.C. §§ 1347 and 2]

24. Paragraphs 1 through 18 of the Introductory Allegations of this Indictment are realleged and incorporated by reference.

25. Beginning no later than in or about July 2007, and continuing until in or about September 2008, within the Southern District of California, and elsewhere, Defendant JOSE MELENDEZ, and others known and unknown to the Grand Jury, in connection with the delivery of and payment for health care benefits, items, and services, devised and intended to devise a material scheme and artifice to defraud a healthcare benefit program, namely Medicare, and to obtain money from Medicare by means of materially false and fraudulent pretenses, representations, promises, and omission and concealment of material facts.

### THE SCHEME AND ARTIFICE

26. The fraudulent scheme operated, in substance, in the manner described in Paragraph 22 of this Indictment, which is realleged and incorporated by reference as though fully set forth herein.

### ACTS IN EXECUTION OF THE SCHEME AND ARTIFICE

27. On or about the dates set forth below, within the Southern District of California and elsewhere, Defendant MELENDEZ and others known and unknown to the grand jury, knowingly and willfully executed

the scheme to defraud described above, by submitting and causing to be submitted to Medicare the following false and fraudulent claims for power wheelchairs and accessories:

| Count | Date Claim Submitted | Medicare Beneficiary | Description of Items Billed | Amount Billed | Claim Number |
|---|---|---|---|---|---|
| 2. | 10/31/2007 | J.R. | Power Wheelchair and Accessories | $5,865 | 107306822482000 |
| 3. | 11/28/2007 | E.L. | Power Wheelchair and Accessories | $5,865 | 107338889471000 |
| 4. | 12/07/2007 | L.L. | Power Wheelchair and Accessories | $5,865 | 107344825119000 |
| 5. | 12/07/2007 | H.U. | Power Wheelchair and Accessories | $5,865 | 107344825118000 |
| 6. | 12/12/2007 | M.R. | Power Wheelchair and Accessories | $5,865 | 107348822035000 |
| 7. | 01/05/2008 | J.C. | Power Wheelchair and Accessories | $5,865 | 108029817604000 |
| 8. | 1/10/2008 | S.R. | Power Wheelchair and Accessories | $5,865 | 108011822601000 |
| 9. | 1/10/2008 | A.R. | Power Wheelchair and Accessories | $5,865 | 108011822599000 |
| 10. | 01/10/2008 | A.R. | Power Wheelchair and Accessories | $5,865 | 108011822595000 |
| 11. | 04/03/2008 | M.A. | Power Wheelchair and Accessories | $5,865 | 108095818312000 |

All in violation of Title 18, United States Code, Section 1347.

//

//

//

14

## Count 12

### ATTEMPT TO TAMPER WITH A WITNESS

### [18 U.S.C. § 1512]

28. Paragraphs 1 through 4 of the Introductory Allegations of this Indictment are realleged and incorporated by reference.

29. On or about January 11, 2012, Defendant JOSE MELENDEZ did knowingly and corruptly attempt to persuade another person, namely Co-conspirator Aristeo Tavares, to provide false and misleading information to the Federal Bureau of Investigation, with the intent to hinder, delay and prevent communication to a law enforcement officer of the United States of information relating to the commission of a federal offense; in violation of Title 18, United States Code, Section 1512(b)(3).

### CRIMINAL FORFEITURE ALLEGATIONS

### [18 U.S.C. § 982(a)(7)]

30. Paragraphs 1 through 27 of this Indictment are realleged and incorporated as if fully set forth herein for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(7).

31. Upon conviction of the offenses of Conspiracy to Pay and Receive Kickbacks and Defraud Medicare, and Health Care Fraud as alleged in Counts 1-11, Defendants SCHWARTZ and MELENDEZ shall, pursuant to Title 18, United States Code, Section 982(a)(7), forfeit to the United States: (a) all right, title, and interest in any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offenses; and (b) a sum of money equal to the total amount of gross proceeds derived, directly or indirectly, from such offenses.

32. If any of the above-described forfeitable property, as a result of any act or omission of Defendants SCHWARTZ and MELENDEZ: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of Defendants SCHWARTZ and MELENDEZ up to the value of the forfeitable property described above;

All pursuant to Title 18, United States Code, Section 982(a)(7).

DATED: June 27, 2012.

A TRUE BILL:

_____
Foreperson

LAURA E. DUFFY
United States Attorney

By: _____
SHIREEN M. BECKER
Assistant U.S. Attorney